# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG LANGWEILER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | NO. 10-3210 |
| THE BOROUGH OF NEWTOWN, et al., | : | |
| Defendants. | : | |

## MEMORANDUM ON PARTIAL DISMISSAL

**Baylson, J.**                                                                                                                            **December 28, 2010**

      This action arises out of a former Borough of Newtown police officer's alleged false arrest and subsequent alleged harassment of Plaintiff Craig Langweiler ("Langweiler"). Langweiler brings various claims under 42 U.S.C. § 1983 against Defendants Borough of Newtown (the "Borough"), its Police Chief Anthony Wojciechowski ("Wojciechowski"), and the offending officer, Lee Matthews ("Matthews") (collectively referred to herein as "Defendants"). Presently before the Court are Defendants' Motion to Partially Dismiss Plaintiff's Complaint (ECF No. 7) and Langweiler's Cross-Motion for Leave to File an Amended Complaint (ECF No. 12).

      Defendants seek to dismiss Langweiler's request for punitive damages, all claims asserted against the Borough and Wojciechowski,[1] and two of the claims against Matthews: violation of

---

[1] In his Complaint, Langweiler alleged the Borough and Wojciechowski failed to properly train, supervise, and control Matthews; expressed deliberate indifference to Matthews's dangerous propensities; ratified Matthews's malicious prosecution of Langweiler; and conspired to employ an officer with dangerous propensities. (Compl., ECF No. 1 at 6.)

Langweiler's liberty interest in his reputation and conspiring to unlawfully seize Langweiler.[2]
For the following reasons, the Defendants' Motion will be **granted** in part and **denied** in part, and Langweiler's Cross-Motion will be **denied**. Langweiler will be granted leave to amend his Complaint to address the deficiencies identified below.

I.   **Factual and Procedural History**

According to the Complaint, the underlying facts are as follows. On or about July 1, 2008, Matthews pulled over Langweiler and arrested him for driving under the influence and assaulting a police officer. (Compl. ¶ 9.) Matthews "parad[ed Langweiler] down the street in handcuffs for the purpose of taking him to a county jail." (Compl. ¶ 10.) The arrest was reported on the front page of a local paper the next day. (Compl. ¶ 11.) As a consequence of the arrest and charges, Langweiler was terminated from his job as a stock broker and could not find employment for six months. (Compl. ¶ 12.) Both New Jersey and Florida also suspended his stock broker's licenses, and they remain suspended. (Compl. ¶ 17.)

Langweiler also alleges that on the night of his arrest, Matthews impounded his car and intentionally rolled down the windows to allow in rain, destroying 150 harmonicas. (Compl. ¶¶ 13, 18.) Although the charges were ultimately dismissed, Langweiler remained in jail for three days after his arrest and "expended tens of thousands of dollars in legal fees" to fight the charges. (Compl. ¶¶ 14, 19-20.) He also claims that Matthews pulled him over on at least four other occasions to harass him (Compl. ¶ 14), and persuaded a police officer in another township to pull him over for allegedly carrying contraband (Compl. ¶ 15). The unidentified officer pulled over

---

[2] In addition to these two claims, Langweiler also asserts against Matthews violations of his right to due process, right from false arrest, right against malicious prosecution, right against illegal search and seizure, and right against false imprisonment. (Compl. at 5.)

Langweiler outside the officer's jurisdiction (Compl. ¶ 16.)

With regard to the Borough and Wojciechowski, Langweiler alleges that they "made no attempt at a background check" of Matthews when they initially hired him, which would have disclosed that he had been terminated from another township for "misconduct." (Compl. ¶¶ 22-23.) Further, Langweiler contends the Borough and Wojciechowski failed to properly supervise, train, and control Matthews. (Compl. ¶ 21.)

On July 1, 2010, Langweiler filed this civil action against Defendants. (ECF No. 1.) On September 2, 2010, Defendants filed the pending Motion to Partially Dismiss Plaintiff's Complaint. (ECF No. 7.) After having been granted extensions of time, Langweiler timely responded and filed a Cross-Motion for Leave to File an Amended Complaint. (ECF No. 12.)

## II. Jurisdiction and Legal Standards

### A. Jurisdiction

The Court has jurisdiction over Langweiler's § 1983 claims under 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b).

### B. Legal Standards

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).

The Third Circuit has addressed the effect of the Supreme Court's most recent pleading-standard decisions, Twombly v. Bell Atlantic Corp., 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). See Phillips, 515 F.3d at 233-34. Twombly established a two-pronged

approach for all civil actions: first, the court asks whether the complaint sets forth factual allegations or conclusory statements; second, if the complaint sets forth factual allegations, the court must assume their veracity and draw reasonable inferences in favor of the non-moving party, but then must determine whether the factual allegations plausibly give rise to an entitlement to relief. Id.; see Iqbal 129 S. Ct. at 1950, 1953; see also Santiago v. Warminster Twp., No. 10-1294, ___ F.3d ___, 2010 WL 5071779, at *4 & n.7 (3d Cir. Dec. 14, 2010) (suggesting the precursor to these two steps requires the court to identify the legal elements of the claim). At Phillips's first step, the court should separate the factual and legal elements of the claims, accepting the well-pleaded facts as true and disregarding any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

To state a claim, a plaintiff must allege circumstances with enough factual matter to suggest the required claim exists. Phillips, 515 F.3d at 234. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims. Iqbal, 129 S. Ct. at 1949; Phillips, 515 F.3d at 234. Pleading standards are not the same as standards of proof. See Fowler, 578 F.3d at 213-14.

Whether a claim is plausible depends on the context, i.e. the nature of the claim asserted. Phillips, 515 F.3d at 233. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).

### III. Discussion

Langweiler brings his claims under 42 U.S.C. § 1983. Congress enacted § 1983 as a

federal cause of action against the deprivation of any rights, privileges, or immunities secured by the Constitution or the laws of the United States. Town of Castle Rock v. Gonzales, 545 U.S. 748, 755 (2005). To state a § 1983 claim, the claimant must demonstrate that the defendants, acting under color of state law, deprived plaintiff of a right secured by the Constitution or the laws of the United States. Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).

Defendants seek dismissal of Langweiler's request for punitive damages, his claims for violation of his liberty interest in his reputation and civil conspiracy against Matthews, and all claims against the Borough and Wojciechowski. Each claim will be addressed in turn.

### A. Punitive Damages

In his prayer for relief, Langweiler asks the Court to award punitive damages for his claims. Defendants seek dismissal of this request to the extent it requests punitive damages against a municipality and officers acting in their official capacity. Wojciechowski and Matthews further argue that Langweiler's allegations do not state a claim for punitive damages against them in their personal capacities. Langweiler does not respond to these arguments.

Punitive damages are not recoverable from a municipality or from an individual sued in his or her official capacity. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267 (1981) (holding municipality immune from punitive damages under § 1983 claim); Kentucky v. Graham, 473 U.S. 159, 165-67 (1985) (concluding punitive damages are unavailable against an officer sued in official capacity because an official-capacity suit is against the entity itself); Gregory v. Chehi, 843 F.2d 111, 119-20 (3d Cir. 1988) ("Punitive damages cannot be recovered from [township council members] in their official capacities."). Therefore, Defendants' Motion will be granted to the extent Langweiler requests punitive damages against the Borough and the

individual defendants in their official capacities.

But punitive damages may be awarded against a state actor in his or her individual capacity. Smith v. Wade, 461 U.S. 30, 56 (1983); City of Newport, 453 U.S. at 167 n.13. The plaintiff must show that the defendant's conduct was motivated by an evil motive or intent, or that the conduct involved reckless or callous indifference to the federally protected rights of others. Smith, 461 U.S. at 56. This standard is disjunctive, so the defendant's conduct need only be reckless or callous. Springer v. Henry, 435 F.3d 268, 281 (3d Cir. 2006).

"Reckless indifference" refers to a defendant's knowledge that he may be acting in violation of federal law. Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000). Thus, the standard focuses on the defendant's state of mind, and the existence of a federally protected right does not guarantee eligibility for punitive damages. Whittaker v. Fayette County, 65 F. App'x 387, 393 (3d Cir. 2003) (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536-37 (1999)).

It is unclear from the face of the Complaint whether Langweiler is suing Wojciechowski in his individual capacity. To make this determination, the Third Circuit has advised that the Court must look to the complaint. Atwell v. Schweiker, 274 F. App'x 116, 118 (3d Cir. 2007) (citing Hafer v. Melo, 912 F.2d 628, 635 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991)); see also Graham, 473 U.S. at 167 n.14. Further, courts resolve the ambiguity in favor of the plaintiff, and assume a suit is against an official in his individual capacity when the plaintiff seeks punitive damages. See Atwell, 274 F. App'x at 118 (citing Gregory, 843 F.2d at 119-20).

Even assuming Langweiler has sued Wojciechwoski in both capacities, he has not made sufficient factual allegations to state a claim for punitive damages against Wojciechowksi in his individual capacity. The only factual allegation Langweiler makes is that Wojciechowski failed

to perform a background check before hiring Matthews. Nothing in this allegation allows the Court to reasonably infer that Wojciechowski acted with evil motive or intent. Nor can the Court infer he acted with reckless or callous indifference for Langweiler's rights, particularly because Langweiler fails to identify the "misconduct" which allegedly prompted Matthews's termination from another township.

In contrast, Langweiler's allegations regarding Matthews are sufficient to survive dismissal. He alleges that Matthews arrested him for charges Matthews knew to be false, paraded him down the street in handcuffs, facilitated damage to his personal property, pulled him over on several other occasions to harass him, and solicited another police officer to pull him over. (Compl. ¶¶ 9, 13-16, 18.) Based on these allegations, the Court concludes that Langweiler has pleaded a plausible claim that Matthews acted with an evil motive or intent, or with reckless or callous indifference for Langweiler's rights.

For these reasons, Defendants' Motion will granted with regard to Langweiler's request for personal-capacity punitive damages from Wojciechowki, and will be denied with regard to Matthews. Langweiler will be granted leave to amend to allege facts relevant as to punitive damages against Wojciechowski in his personal capacity.

### B. Claims Against Matthews

#### 1. Liberty Interest in Reputation

The Fourteenth Amendment prohibits state action which "deprive[s] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To determine whether a defendant's conduct deprived a plaintiff of due process, the Court must first ask whether the asserted individual interest is encompassed within scope of the Fourteenth

Amendment's protection. Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008).

Reputation alone is not an interest protected by the due process clause; rather, to make out a claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest. Id. at 233-34. To satisfy the stigma prong, the plaintiff must allege that the purportedly stigmatizing statement(s) (1) were made publicly and (2) were false. Id.; see Fraternal Order of Police, Lodge No. 5 v. Tucker, 868 F.2d 74, 82-83 (3d Cir. 1989).

As for the "plus" prong, financial harm alone is insufficient to transform a reputation interest into a liberty interest – the plaintiff must allege an alteration or extinguishment of some additional interest created by state law. See Sturm v. Clark, 835 F.2d 1009, 1012-13 (3d Cir. 1987). The Third Circuit has recognized a relevant liberty interest – the right to hold specific private employment and to follow a chosen profession free from unreasonable government interference. Culinary Servs. of Del. Valley, Inc. v. Borough of Yardley, 385 F. App'x 135, 141 (3d Cir. 2010) (citing Piecknick v. Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994)). But it is the liberty to pursue a calling or occupation, not the right to a specific job, that is secured by the Fourteenth Amendment. Id. Therefore, Langweiler must allege inability to obtain employment within his chosen field, not just a particular job. See id.; see also Herz v. Degnan, 648 F.2d 201, 208 (3d Cir. 1981) (finding constitutionally protected property interest in license to practice as psychologist).

Defendants argue that there is no protected right to private employment and Langweiler alleges no other deprivation for this claim. Although Langweiler does not respond to this argument, Defendants' position is contrary to the law of this Circuit. There may be no right to

specific private employment, but there is a protected right to pursue a chosen occupation.

In this case, Langweiler's allegations are nevertheless insufficient to satisfy the "plus" prong. He alleges that he lost his job for six months and his stock broker licenses in Florida and New Jersey are suspended. He does not allege that he cannot obtain a license from any other state. He has not alleged he is no longer able to pursue his occupation as a stock broker all together. For these reasons, Defendants' Motion will be granted, and Langweiler is given leave to amend.

### 2. Civil Conspiracy

To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive the plaintiff of a constitutional right under color of state law. Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993), overruled on other grounds by UA Theatre Circuit v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003). A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit an act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong or injury upon another, and an overt act that results in damage. Adams v. Teamsters Local 115, 214 F. App'x 167, 172 (3d Cir. 2007).

The plaintiff must allege facts allowing an inference of combination, agreement, or understanding among all or between any defendants to violate the plaintiff's rights. Gerhart v. Pennsylvania, No. 09-1145, 2009 WL 2581715, at *6 (E.D. Pa. Aug. 13, 2009) (Golden, J.). Allegations of fact such as the period of the conspiracy, the object of the conspiracy, and actions of the conspirators taken to achieve that purpose are necessary. "A mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the pleading requirements for

[facts to support] a conspiracy claim." Kost v. Dep't of Pub. Welfare, No. 07-2404, 2009 WL 466166, at *4 (E.D. Pa. Feb. 24, 2009) (Jones II, J.).

Defendants contend that Langweiler has failed to sufficiently allege a conspiracy and has not identified a constitutional deprivation. Langweiler does not respond.

The Court agrees that Langweiler has not sufficiently pled a conspiracy. There is no allegation of an agreement between Matthews and the other township officer to deprive Langweiler of his constitutional rights. There is nothing to indicate that a meeting of the minds occurred to achieve the alleged conspiracy's objective of unlawfully seizing Langweiler. Langweiler only alleges that Matthews, using false information, encouraged another officer to pull Langweiler over. This does not suggest that the other officer agreed to participate in a plan to violate Langweiler's rights.

Therefore, Defendants' Motion will be granted on this claim, and Langweiler is given leave to amend.

### C. Claims Against the Borough and Wojciechowski

Langweiler also filed several claims against Matthews's employer, the Borough of Newtown, and his supervisor, Wojciechowski, under § 1983. There is no respondeat superior liability under § 1983. Board of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 689 (1978)). Instead, a plaintiff must identify a specific policy or custom which is the "moving force" behind the constitutional violation, i.e. has the requisite degree of culpability and a direct causal link to the plaintiff's injuries. Id. at 404. A "policy" is an official proclamation by a decisionmaker with

final authority,³ and a "custom" is a practice of state officials so permanent and well-settled as to virtually constitute law. Kelly v. Borough of Carlisle, 622 F.3d 248, 263 (3d Cir. 2010).

Courts have concluded that actionable policies or customs include failure to train, failure to supervise or control, and failure to screen, among others. E.g., Bryan County, 520 U.S. at 411 (recognizing failure to screen claim); City of Canton v. Harris, 489 U.S. 378, 388 (1989) (recognizing failure to train claim). If the policy or custom does not facially violate federal law, causation can be established only by demonstrating municipal action was taken with deliberate indifference as to its known or obvious consequences. Kelly, 622 F.3d at 263. A showing of simple or even heightened negligence will not suffice. Id.

Supervisors, in turn, can be held liable under one of two theories: (1) the supervisor is a final decisionmaker who established the policy or custom at issue, or (2) the supervisor participated in violating plaintiff's rights, directed others to violate them, or as the person in charge, had knowledge and acquiesced in, subordinates' violation of plaintiff's rights. See Santiago, 2010 WL 5071779, at *4 n.5. The Third Circuit recently noted, however, following the Supreme Court's dicta in Iqbal, it is unclear whether a supervisor's knowledge, without more, remains sufficient to establish the causal link. See id. at *5 n.8.

Langweiler asserts four claims against the Borough and Wojciechowski: (1) failure to train, supervise, and control Matthews; (2) deliberate indifference to Matthews's dangerous

---

³ Proving final authority is an essential element. LaVerdure v. County of Montgomery, 324 F.3d 123, 126 (3d Cir. 2003). Under Pennsylvania law, a township police chief is not a final policymaker; that authority is vested in the township's board of supervisors by statute. See Santiago, 2010 WL 5071779, at *9 n.11 (citing 53 Pa. Stat. Ann. § 66902). The Santiago Court further noted that the Supreme Court has forbidden courts from assuming municipal policymaking authority lies somewhere other than where applicable law purports to put it. Id.

propensities; (3) ratification of Matthews's malicious prosecution; and (4) conspiracy to employ an officer with dangerous propensities. The Court will address each claim in turn.

### 1. Failure to Train, Supervise, or Control Matthews

A municipality's or supervisor's failure to properly train its employees and officers can create an actionable violation of a plaintiff's constitutional rights under § 1983. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing City of Canton, 489 U.S. at 388). The failure to train must reflect a deliberate or conscious choice by the defendant. Id. To attach liability, the deficiency must be closely related to the injury. Id. The plaintiff (1) must identify a failure to provide specific training that (2) has a causal nexus with the plaintiff's injuries, and (3) must demonstrate that the absence of specific training can reasonably be said to reflect a deliberate indifference to whether alleged constitutional deprivations occurred. Id. Proving avoidability by better or more training is not sufficient. Id.

Similarly, a claim for failure to supervise under § 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact. Id. at 489 n.5; see Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996) (noting adoption of deliberate indifference standard in other contexts). A plaintiff asserting a failure to supervise claim must not only identify a specific supervisory practice the defendant failed to employ, but must also allege both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar conduct, and (2) circumstances under which the supervisor's action could be found to have communicated a message of approval. C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000) (en banc).

Defendants contend that Langweiler's allegations are not sufficient for this claim because

he alleges no facts that the Borough or Wojciechowski approved, tolerated, or ignored Matthews's behavior. Langweiler argues that his allegations of Matthews's conduct and the Borough's and Wojciechwoski's failure to conduct a background check raise an inference that they had knowledge of Matthews's behavior and tolerated or ignored it.

Langweiler's complaint is inadequate on this claim. He makes a conclusory statement that the Borough and Wojciechwoski failed to train, supervise, and control Matthews, but does not identify a specific training or supervisory practice that was lacking or deficient which could have prevented Matthews's alleged violations of Langweiler's rights. Moreover, with regard to supervision, Langweiler offers no facts to suggest the Borough or Wojciechowski encouraged or approved Matthews's conduct or that this conduct was part of a prior pattern. For these reasons, Defendants' Motion will be granted on this claim, and Langweiler is given leave to amend.

### 2. Deliberate Indifference to Dangerous Propensities

Langweiler alleges that the Borough and Wojciechowski exhibited deliberate indifference by failing to perform a background check before hiring Matthews. This claim sounds in failure to screen, a claim which the Supreme Court discussed at length in Bryan County, 520 U.S. 397.

In Bryan County, the Court concluded that to prevent municipality liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged. Id. at 410. The plaintiff must demonstrate the decision to hire reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Id. at 412. The risk of a hiring decision depends on the background of the applicant. Id. at 410. Inadequate investigation of the background is not enough. Id. at 412.

Defendants contend that Bryan County precludes Langweiler's failure to screen claim. They argue a single hiring decision does not show deliberate indifference and, therefore, cannot serve as the foundation for a § 1983 claim against municipal actors. Langweiler relies on his allegations of the failure to perform a background check and Matthews's conduct.

In this case, Langweiler alleges that the Borough and Wojciechowski failed to check Matthews's background, which would have revealed that he was terminated from another township for "misconduct." This fails to state a claim for failure to screen because Langweiler does not provide sufficient factual allegations to allow the Court to determine whether a link exists between Matthews's actual background and the particular injuries to Langweiler. General "misconduct" is not sufficient to allow the Court to infer that adequate scrutiny of Matthews's background would have led the Borough or Wojciechowski "to conclude that the plainly obvious consequence of the decision to hire [Matthews] will be a deprivation of [Langweiler's] federally protected right." See id. at 411.

Therefore, Defendants' Motion will be granted on this claim, and Langweiler is given leave to amend.

### 3. Ratification of Malicious Prosecution

To prevail on a malicious prosecution claim under § 1983, a plaintiff must show that (1) the defendant initiated a criminal proceeding; (2) the criminal proceedings ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding. McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009).

Defendants argue that Langweiler fails to identify a policy or custom attributable to the municipal actors for this claim. Langweiler responds only with regard to Wojciechowski. He contends that his allegations that Wojciechowski ignored Matthews's prior termination and failed to control Matthews suffice to state a claim that Wojcieshowski turned a blind eye to Matthews's dangerous propensities.

In his Complaint, Langweiler alleges that the Borough and Wojciechowski ratified or otherwise approved Matthews's malicious prosecution. As outlined above, a municipality is only liable under § 1983 if the injury results from a policy or custom. Further, a supervisor may be held liable for establishing such a policy or custom, or for having participated in the violation, directed the violation, or knowingly acquiesced in the violation by subordinates.

Langweiler's complaint fails to sufficiently plead this claim against Defendants. Langweiler does not identify a specific custom or policy which may have caused his injuries. Nor does he allege that Wojciechowski directed, participated in, or acquiesced in Matthews's alleged malicious prosecution of Langweiler. Moreover, there is no allegation that Wojcieshowski was ever present during or had knowledge of Matthews's conduct. Finally, Langweiler's only assertion against these Defendants is that they failed to conduct a proper background check, which has nothing to do with ratifying subsequent behavior.

For these reasons, Defendant's Motion will be granted on this claim, and Langweiler is given leave to amend.

4.  **Civil Conspiracy**

The elements for civil conspiracy were set forth above, and require the plaintiff to show that two or more conspirators reached an agreement to deprive the plaintiff of a constitutional

right under color of law.  <u>Parkway Garage</u>, 5 F.3d at 700.  Defendants contend that Langweiler has failed to sufficiently allege an agreement and a constitutional right that was infringed.  Langweiler does not respond.

The Court agrees that Langweiler's allegations fall short for this claim.  He has not alleged any agreement or meeting of the minds, let alone an agreement with the objective of violating Langweiler's rights.  Langweiler merely asserts a claim against the Borough and Wojciechowski "[f]or conspiring," but simply invoking the term "conspiracy" is not sufficient.  <u>See</u> <u>Kost</u>, 2009 WL 466166, at *4.  For these reasons, Defendants' Motion will be granted on this claim, and Langweiler is given leave to amend.

### D. Langweiler's Motion to Amend

Langweiler has moved to amend his complaint and has attached a copy of the proposed Amended Complaint.  (ECF No. 12.)  The Court will deny this Motion with leave to re-file to allow Langweiler the opportunity to cure the deficiencies identified above.

### IV. <u>Conclusion</u>

Consistent with the reasons detailed above, Defendants' Motion to Partially Dismiss (ECF No. 7) will be granted in all but one respect.  Defendants' Motion will be denied with respect to Langweiler's request for punitive damages against Matthews in his personal capacity.  Langweiler's Cross-Motion for Leave to File an Amended Complaint (ECF No. 12) is denied in its current form.  Langweiler is granted leave to amend his Complaint in conformity with this Memorandum within thirty (30) days.

An appropriate Order will follow.

O:\Todd\10-3210 Langweiler v. Newtown et al\Langweiler -- MTD Memo - draft 4.wpd