# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG LANGWEILER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | NO. 10-3210 |
| THE BOROUGH OF NEWTOWN, et al., | : | |
| Defendants. | : | |

## MEMORANDUM ON PARTIAL DISMISSAL

**Baylson, J.**                                                                                                 **May 12, 2011**

This action arises out of a former Borough of Newtown police officer's alleged false arrest and subsequent alleged harassment of Plaintiff Craig Langweiler ("Langweiler"). Langweiler brings various claims under 42 U.S.C. § 1983 against Defendants Borough of Newtown (the "Borough"), its Police Chief Anthony Wojciechowski ("Wojciechowski"), the offending officer, Lee Matthews ("Matthews"), and John Does 1-10 (collectively referred to herein as "Defendants"). Presently before the Court is Defendants' Motion to Partially Dismiss Plaintiff's First Amended Complaint. (Mot. to Dismiss, ECF No. 21.) For the following reasons, Defendants' Motion will be **granted** in part and **denied** in part.

**I.**     **Factual and Procedural History**

According to the Amended Complaint, the underlying facts are as follows. On or about July 1, 2008, Matthews pulled over Langweiler and arrested him for driving under the influence and assaulting a police officer. (Am. Compl., ECF No. 19 ¶ 10.) Matthews "parad[ed] Langweiler] down the street in handcuffs for the purpose of taking him to a county jail." (Id. ¶

11.) The arrest was reported on the front page of a local paper the next day. (Id. ¶ 12.) As a consequence of the arrest and charges, Langweiler was terminated from his job as a stock broker and could not find employment for six months. (Id. ¶ 13.) Both New Jersey and Florida also suspended his stock broker's licenses, and they remain suspended. (Id. ¶ 18.)

Langweiler also alleges that on the night of his arrest, Matthews impounded his car and intentionally rolled down the windows to allow in rain, destroying 150 harmonicas. (Id. ¶¶ 14, 20.) Although the charges were ultimately dismissed, Langweiler remained in jail for three days after his arrest and "expended tens of thousands of dollars in legal fees" to fight the charges. (Id. ¶¶ 15, 21-22.) He also claims that Matthews pulled him over on at least four other occasions to harass him, and persuaded a police officer in another township to pull him over for allegedly carrying contraband. (Id. ¶¶ 15-16). The unidentified officer pulled over Langweiler outside the officer's jurisdiction (Id. ¶ 16.) Langweiler alleges the unidentified officer knew no probable cause existed but still agreed to pull him over. (Id. ¶ 17.)

With regard to the Borough and Wojciechowski, Langweiler alleges that they "made no attempt at a background check" of Matthews when they initially hired him, which would have disclosed that he had been terminated from another township for "misconduct." (Id. ¶¶ 24, 27.) Langweiler alleges Matthews was terminated from his prior position for "improper[ly] stopping vehicles, without probable cause and solely for the purpose of earning overtime." (Id. ¶ 25.) Moreover, nine other police departments rejected Matthews's applications for employment before the Borough hired him. (Id. ¶ 26.) Langweiler contends the other departments rejected Matthews's applications because of the nature of his termination. (Id.)

According to Langweiler, the Borough and Wojciechowski did not attempt a background

check because they knew Matthews's prior history. (Id. ¶ 28.) Nevertheless, they hired him as a non-civil service part time police officer subject to Wojciechowski's day-to-day supervision and pending completion of an education and training program. (Id. ¶ 30.) Langweiler contends the Borough and Wojciechowski did not enforce these conditions. (Id. ¶ 31.) Langweiler also alleges that John Does 1-10 conspired with Wojciechowski to hire Matthews. (Id. ¶ 29.)

On December 29, 2010, the Court granted in part and denied in part Defendants' first motion to dismiss. See Langweiler v. Borough of Newtown, No. 10-3210, 2010 WL 5393529, at *9 (E.D. Pa. Dec. 29, 2010). The Court granted Langweiler leave to file an amended complaint to cure the deficiencies identified. Defendants' present Motion to Dismiss seeks to partially dismiss that Amended Complaint. After having been granted an extension of time, Langweiler timely responded. (Opp'n, ECF No. 26.)

## II. Jurisdiction and Legal Standards

### A. Jurisdiction

The Court has jurisdiction over Langweiler's § 1983 claims under 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b).

### B. Legal Standards

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). The Third Circuit has addressed the effect of the Supreme Court's most recent pleading-standard decisions, Twombly v. Bell Atlantic Corp., 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). See Phillips, 515 F.3d at 233-34. Twombly established a three-

pronged approach for all civil actions: first, the court must identify the elements Langweiler must plead to state a claim; second, the court asks whether the complaint sets forth factual allegations or conclusory statements; third, if the complaint sets forth factual allegations, the court must assume their veracity and draw reasonable inferences in favor of the non-moving party, but then must determine whether the factual allegations plausibly give rise to an entitlement to relief. Santiago v. Warminster Twp., 629 F.3d 121, 130 & n.7 (3d Cir. 2010); see Iqbal 129 S. Ct. at 1950, 1953. For the second step, the court should separate the factual and legal elements of the claims, accepting the well-pleaded facts as true and disregarding any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

To state a claim, a plaintiff must allege circumstances with enough factual matter to suggest the required claim exists. Phillips, 515 F.3d at 234. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims. Iqbal, 129 S. Ct. at 1949; Phillips, 515 F.3d at 234. Pleading standards are not the same as standards of proof. See Fowler, 578 F.3d at 213-14.

Whether a claim is plausible depends on the context, i.e. the nature of the claim asserted. Phillips, 515 F.3d at 233. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).

**III.    Discussion**

Langweiler brings his claims under 42 U.S.C. § 1983. Congress enacted § 1983 as a federal cause of action against the deprivation of any rights, privileges, or immunities secured by

the Constitution or the laws of the United States. Town of Castle Rock v. Gonzales, 545 U.S. 748, 755 (2005). To state a § 1983 claim, the claimant must demonstrate that the defendants, acting under color of state law, deprived plaintiff of a right secured by the Constitution or the laws of the United States. Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).

Defendants seek dismissal of Langweiler's claim against John Does 1-10, his request for punitive damages against Wojciechowski, his claim for violation of his liberty interest in his reputation against Matthews, and three claims against the Borough and Wojciechowski: failure to properly train, supervise, and control; ratification of malicious prosecution; and conspiracy.[1] Langweiler responds only with regard to his request for punitive damages against Wojciechowski and the failure to train, supervise, and control claims against the Borough and Wojciechowski. Under Local Civil Rule 7.1(c),[2] the Court will exercise its discretion to grant Defendants' Motion as unopposed in all other respects.

### A. Punitive Damages

In his prayer for relief, Langweiler asks the Court to award punitive damages for his

---

[1] In his Amended Complaint, Langweiler also claims that the Borough and Wojciechowski expressed deliberate indifference to Matthews's dangerous propensities. (Am. Compl. at 8.)

[2] Local Civil Rule 7.1(c) provides, in relevant part:

Every motion not certified as uncontested, or not governed by Local Civil Rule 26.1(g), shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion. . . . [A]ny party opposing the motion shall serve a brief in opposition, together with such answer or other response which may be appropriate, within fourteen (14) days after service of the motion and supporting brief . . . . In the absence of timely response, the motion may be granted as uncontested except that a summary judgment motion, to which there has been no timely response, will be governed by Fed.R.Civ.P. 56[].

claims. The Court previously dismissed his claim for punitive damages against the Borough and Wojciechowski in his official capacity. See Langweiler, 2010 WL 5393529, at *3. Defendants seek dismissal of Langweiler's request for punitive damages against Wojciechowski in his individual capacity. Wojciechowksi contends that Langweiler's allegations may suggest negligent conduct, but not the evil motive or reckless indifference necessary to justify punitive damages. (Memo. at 11-12.) Langweiler responds that the nature of Matthews's misconduct and rejection from nine other police departments justifies punitive damages. (Opp'n at 4.)

As the Court outlined in its December 29, 2010 Memorandum, punitive damages may be awarded against a state actor in his or her individual capacity. Smith v. Wade, 461 U.S. 30, 56 (1983); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267 n.13 (1981). The plaintiff must show that the defendant's conduct was motivated by an evil motive or intent, or that the conduct involved reckless or callous indifference to the federally protected rights of others. Smith, 461 U.S. at 56. This standard is disjunctive, so the defendant's conduct need only be reckless or callous. Springer v. Henry, 435 F.3d 268, 281 (3d Cir. 2006).

"Reckless indifference" refers to a defendant's knowledge that he may be acting in violation of federal law. Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000). Thus, the standard focuses on the defendant's state of mind, and the existence of a federally protected right does not guarantee eligibility for punitive damages. Whittaker v. Fayette County, 65 F. App'x 387, 393 (3d Cir. 2003) (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536-37 (1999)).

It remains unclear from the face of the Amended Complaint whether Langweiler is suing Wojciechowski in his individual capacity. To make this determination, the Third Circuit has advised that the Court must look to the complaint. Atwell v. Schweiker, 274 F. App'x 116, 118

(3d Cir. 2007) (citing Hafer v. Melo, 912 F.2d 628, 635 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991)); see also Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985). Further, courts resolve the ambiguity in favor of the plaintiff, and assume a suit is against an official in his individual capacity when the plaintiff seeks punitive damages. See Atwell, 274 F. App'x at 118 (citing Gregory v. Chehi, 843 F.2d 111, 119-20 (3d Cir. 1988)).

Assuming Langweiler has sued Wojciechwoski in his individual capacity, the Court concludes he has made sufficient factual allegations to state a claim for punitive damages. Although he does not employ the terms "evil motive or intent" or "reckless or callous indifference," Langweiler has portrayed facts that, at least for purposes of a Rule 12(b)(6) motion, permit an inference Wojciechowski acted with the requisite intent or indifference. In particular, Langweiler alleges that Wojciechowski knew about Matthews's prior unlawful conduct, but nevertheless hired him and failed to properly supervise him. Construed in Langweiler's favor, these allegations raise a plausible inference that Wojcieshowski acted with reckless indifference. For these reasons, Defendants' Motion will be denied on this claim.

### B. Failure to Train, Supervise, or Control Matthews

Defendants contend that Langweiler's allegations are not sufficient for this claim because he alleges no facts that the Borough or Wojciechowski approved, tolerated, or ignored Matthews's behavior. Langweiler argues that his allegations of Matthews's conduct and the Borough's and Wojciechwoski's failure to conduct a background check raise an inference that they had knowledge of Matthews's behavior and tolerated or ignored it.

Langweiler filed this claim against Matthews's employer, the Borough, and his supervisor, Wojciechowski, under § 1983. There is no respondeat superior liability under §

1983.  Bd. of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 689 (1978)).  Instead, a plaintiff must identify a specific policy or custom which is the "moving force" behind the constitutional violation, i.e. has the requisite degree of culpability and a direct causal link to the plaintiff's injuries.  Id. at 404.  A "policy" is an official proclamation by a decisionmaker with final authority,[3] and a "custom" is a practice of state officials so permanent and well-settled as to virtually constitute law.  Kelly v. Borough of Carlisle, 622 F.3d 248, 263 (3d Cir. 2010).  If the policy or custom does not facially violate federal law, causation can be established only by demonstrating municipal action was taken with deliberate indifference as to its known or obvious consequences.  Id.; see Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) ("Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.") (quotations and alteration omitted).  A showing of simple or even heightened negligence will not suffice.  Kelly, 622 F.3d at 263.

Supervisors, in turn, can be held liable under one of two theories: (1) the supervisor is a final decisionmaker who established the policy or custom at issue, or (2) the supervisor participated in violating plaintiff's rights, directed others to violate them, or as the person in charge, had knowledge and acquiesced in subordinates' violation of plaintiff's rights.  See

---

[3]  Proving final authority is an essential element.  LaVerdure v. County of Montgomery, 324 F.3d 123, 126 (3d Cir. 2003).  Under Pennsylvania law, a township police chief is not a final policymaker; that authority is vested in the township's board of supervisors by statute.  See Santiago, 629 F.3d at 135 n.11 (citing 53 Pa. Stat. Ann. § 66902).  But in this case the Court is testing the conduct of a borough police chief.  This is an important distinction because a borough mayor is free to delegate to the police chief responsibility for supervising and instructing subordinates.  See 53 Pa. Stat. Ann. § 46121.  The borough council retains authority to hire officers.  Id.

Santiago, 629 F.3d at 129 n.5. The Third Circuit recently noted, however, following the Supreme Court's dicta in Iqbal, it is unclear whether a supervisor's knowledge, without more, remains sufficient to establish the causal link. See id. at 130 n.8.

A municipality's or supervisor's failure to properly train its employees and officers can create an actionable violation of a plaintiff's constitutional rights under § 1983. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). The failure to train must reflect a deliberate or conscious choice by the defendant. Id. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." See Connick, 131 S. Ct. at 1360. To attach liability, the deficiency must be closely related to the injury. Reitz, 125 F.3d at 145. The plaintiff (1) must identify a failure to provide specific training that (2) has a causal nexus with the plaintiff's injuries, and (3) must demonstrate that the absence of specific training can reasonably be said to reflect a deliberate indifference to whether alleged constitutional deprivations occurred. Id. Proving avoidability by better or more training is not sufficient. Id.

Similarly, a claim for failure to supervise under § 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact. Christopher v. Nestelrode, 240 F. App'x 481, 489 n.5 (3d Cir. 2007); see Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996) (noting adoption of deliberate indifference standard in other contexts). A plaintiff asserting a failure to supervise claim must not only identify a specific supervisory practice the defendant failed to employ, but must also allege both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar conduct, and (2) circumstances under which the supervisor's action could be found to

have communicated a message of approval.  C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000) (en banc).

In his Amended Complaint, Langweiler alleges that the Borough and Wojciechoski knew about Matthews's proclivity of stopping vehicles without probable cause, but nevertheless hired him.  He also contends they hired Matthews subject to day-to-day supervision by Wojciechowski and completion of a certification program.  Because Matthews would be subject to daily supervision, Langweiler contends Wojciechowski was responsible for approving Matthews's arrests.  The Borough and Wojciechowski, however, failed to enforce these conditions – Matthews did not receive his certification and Wojciechowski did not supervise him on a daily basis.[4]  Consequently, Langweiler contends they failed to properly train and supervise Matthews.

The Court concludes that Langweiler failed to adequately plead a failure to supervise claim because he did not allege any facts which could plausibly give rise to an inference that the Borough or Wojciechowski communicated their approval of Matthews's conduct.  Just because Wojciechowski was responsible for supervising Matthews does not mean that he approved of Matthews's conduct.  And his failure to supervise Matthews on a daily basis alone does not communicate approval.  See Oliva, 226 F.3d at 222 (finding allegation of failure to supervise

---

[4]  Defendants contend Matthews completed his certification in March 2008. (Memo. Ex. A.)  On a motion to dismiss, courts consider the complaint, its exhibits, matters of public record, and documents that form the basis of a claim.  See Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004).  Documents that form the basis of a claim include those that are integral to or explicitly relied on in the complaint.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Documents are integral when the plaintiff's claims are based on the document.  See In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993).  Langweiler's claims are not based on the March 2008 letter and he does not rely on the letter in his Amended Complaint.  Therefore, the Court excludes the letter as outside the pleadings.  See Fed. R. Civ. P. 12(d).  Instead, the Court assumes the veracity of Langweiler's factual allegations.  See Phillips, 515 F.3d at 233-34.

alone insufficient to survive motion to dismiss). Further, Langweiler offers no allegation to support an inference that the Borough approved or encouraged Matthews's behavior.

On the other hand, Langweiler did sufficiently plead a claim for failure to train. He identified a certification that was a condition of Matthews's employment and alleges that Matthews did not complete the certification. Further, Langweiler alleges that he fell victim to Matthews's prior misconduct, i.e. stopping vehicles without probable cause, on several occasions, which the purported certification may have prevented. And because the Borough and Wojciechowski knew about Matthews's history, their failure to ensure Matthews obtained the certification raises an inference of deliberate indifference. Thus, unlike the supervisor in Connick, Langweiler alleges the Borough and Wojciechowski had knowledge of a pattern of similar violations. See Connick, 131 S. Ct. at 1360. Accordingly, Langweiler has sufficiently pled a claim for failure to train.

For these reasons, Langweiler's claim for failure to supervise is dismissed with prejudice, but Defendants' Motion is denied with respect to the failure to train claim.

## IV. Conclusion

Consistent with the reasons detailed above, Defendants' Motion to Partially Dismiss (ECF No. 21) will be granted in all but two respects. Defendants' Motion will be denied with respect to Langweiler's claim for punitive damages against Wojciechowski and his claims for failure to train against the Borough and Wojciechowksi. All other claims challenged in Defendants' Motion will be dismissed with prejudice. An appropriate Order will follow.

O:\Todd\10-3210 Langweiler v. Newtown et al\Langweiler -- Second MTD Memo - draft 6.wpd